Joseph R. Saveri (State Bar No. 130064)
Matthew S. Weiler (State Bar No. 236052)
Kyla J. Gibboney (State Bar No. 301441)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery, Suite 1200
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
         mweiler@saverilawfirm.com
         kgibboney@saverilawfirm.com

Stuart G. Gross (State Bar No. 251019)
GROSS & KLEIN LLP
The Embarcadero
9 Pier, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628
Facsimile: (415) 480-6688
Email: sgross@grosskleinlaw.com

*Attorneys for Plaintiff and the Proposed Classes*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| A. FROST, <br><br> Plaintiff, and on behalf of all others similarly-situated, <br><br> v. <br><br> LG CORPORATION; LG ELECTRONICS INC.; LG ELECTRONICS U.S.A., INC.; LG DISPLAY CO., LTD.; LG DISPLAY AMERICA INC.; SAMSUNG GROUP; SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SEMICONDUCTOR, INC., <br><br> Defendants. | Case No. <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

Case No.

Plaintiff A. Frost ("Plaintiff"), brings this action individually, and on behalf of a class of all persons similarly situated (the "Class"), for damages and injunctive relief under the antitrust laws of the United States and the State of California, against defendants LG Corporation; LG Electronics Inc.; LG Electronics U.S.A., Inc.; LG Display Co., Ltd.; LG Display America Inc.; Samsung Group; Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc. (collectively, "Defendants"), and alleges as follows on information and belief, except where based on personal knowledge:

## I.      SUMMARY OF THE ACTION

1.      Defendants LG and Samsung have engaged in an unlawful conspiracy to fix and suppress compensation for their employees, including their workforce in the United States. This conspiracy centers on an agreement, entered into and enforced by Defendants' senior executives, that LG and Samsung will not (1) recruit each other's employees, or (2) directly hire each other's employees (the "agreement"). The agreement is anticompetitive because it harms Defendants' employees by imposing restrictions on employee mobility, thereby depriving them of better job opportunities at the other company. The agreement lowers the salaries and benefits Defendants' employees would otherwise have commanded, regardless of whether an employee seeks a job at a Defendant or would be willing to switch jobs, because it reduces salary competition between LG and Samsung. This action seeks damages on behalf of two classes of current and former LG and Samsung employees.

2.      Defendants LG and Samsung are major players in Silicon Valley's high technology scene. Both have established massive office "campuses" in or around San Jose, California. Defendants' Northern California offices' facilitate their well-known businesses in electronic devices such as smartphones and televisions—by, for example, supporting their United States sales networks, researching and developing new products, and launching key products in this district—LG and Samsung's Northern California offices are the base of the companies' initiatives in emerging technology. In addition to the thousands of employees who work in California in LG and Samsung's core electronics businesses, Defendants have recruited hundreds of employees to work in emerging technologies such as cloud computing, artificial intelligence and augmented reality.

3.       LG and Samsung are operated by two of the most powerful and important chaebol[1] in the Republic of Korea (commonly known as South Korea). Measured by revenue, they are the largest chaebol in South Korea, each earning more than 115 trillion Korean won (approximately $105 billion) annually. In the United States, LG and Samsung more closely resemble one another than any other employer. Therefore, the agreement cuts Defendants' employees off not only from the closest competitor for salary and benefits, but also from the most obvious step for career advancement outside of the employee's current position. LG and Samsung's agreement impacts hundreds of thousands of workers globally, including tens of thousands in the United States. The agreement suppresses competition for the entire United States salaried workforce for LG and Samsung, regardless of whether any particular employee actually sought to change employment.

4.       Defendants' agreement reflects a long-standing conspiracy.[2]

5.       Defendants' agreement to suppress competition is a naked restraint of trade that is *per se* unlawful under federal and California law. Plaintiff seeks injunctive relief and damages for violations of: Section 1 of the Sherman Act, 15 U.S.C. § 1; the Cartwright Act, California Business and Professions Code §§ 16720, *et seq.*; California Business and Professions Code § 16600; and California Business and Professions Code §§ 17200, *et seq.*

## II.     JURISDICTION AND VENUE

6.       Plaintiff brings this action to recover damages and obtain injunctive relief, including treble damages, costs of suit, and reasonable attorneys' fees.

7.       The Court has subject matter jurisdiction pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) and 28 U.S.C. §§ 1331 and 1337.

8.       Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to

---

[1] "A chaebol generally refers to a collective of formally independent firms under the single common administrative and financial control of one family. It literally means a group or party of wealth: chae (財) means wealth or fortune, and bol (閥) means a group or party. While there is no consensus, most scholars agree that a chaebol is defined by three business structural traits: it consists of many affiliated firms operating in a diverse number of industries, ownership and control of the group lie in a dominant family, and the business group accounts for a great percentage of the national economy." David Murillo & Yun-dal Sung, *Understanding Korean Capitalism: Chaebols and their Corporate Governance* (2013).

Plaintiff's claims arose in this district, a substantial portion of the affected interstate trade and commerce was carried out in this district, and both LG and Samsung maintain offices or reside in this district.

9. Defendants are subject to the jurisdiction of this Court by virtue of their nationwide contacts and other activities, as well as their contacts with the State of California.

10. Defendants employ thousands of employees in the State of California, and in particular, in Silicon Valley.

11. California is a major hub of operations for both LG and Samsung. LG and Samsung each have many offices located in this district, including several in Silicon Valley and in San Francisco. LG and Samsung further the conspiracy through the operations of their subsidiaries or affiliates located in this district.

12. Samsung's recruitment efforts target Silicon Valley high technology workers. Defendant Samsung recently unveiled a 10-story building and campus with approximately 1.1 million square feet of space in San Jose, California. The "campus" covers 9.4 acres and is wholly-owned by Defendant Samsung.

13. Defendant LG also targets bay area technology workers. For example, through LG Silicon Valley Lab, a "premier innovation center" of LG Electronics with Bay Area offices in Santa Clara and San Francisco. The Bay Area is a critical market to LG, and a focus of national marketing efforts. For example, LG recently unveiled its new V20 Nougat Android smartphone in San Francisco, to coincide with the launch of Apple's iPhone 7.

### III.   CHOICE OF LAW

14. California law applies to the claims of Plaintiff and all California Class members. Application of California law is constitutional, and California has a strong interest in protecting its

---

[2] For purposes of this complaint, Plaintiff alleges Defendants entered into this unlawful agreement no later than January 1, 2005, but the specific date upon which the agreement and the ensuing conspiracy commenced (assuming it is even capable of determination given the nature of secret conspiracies) is information known only to Defendants. Plaintiff will amend this complaint upon discovering sufficient evidence pointing to a specific start date for Defendants' conspiracy.

citizens, deterring unlawful business practices of resident corporations and compensating those harmed by activities occurring in and emanating from California.

15.     California is the State in which Plaintiff's and California Class members' relationship with the Defendants is centered.

16.     Plaintiff and California Class members were injured by conduct occurring, in part, and emanating from, California. Specifically, the agreement was enforced and applied in California, although it was likely entered into outside of California.

17.     For these reasons, among others, California has significant contacts, and a significant aggregation of contacts, creating state interests, with all parties and the acts alleged herein.

18.     California's substantial interests far exceed those of any other state.

## IV.   THE PARTIES

### A.   Plaintiff

19.     Plaintiff A. Frost is a citizen of the State of California and resides in Santa Clara County. From approximately September 2012 until January 2014, A. Frost worked in Northern California, in this district, as a sales manager for LG. A. Frost was injured in his business or property by reason of the violations alleged herein.

### B.   LG Defendants

20.     Defendant LG Corporation is a South Korean entity headquartered at LG Twin Towers, 20 Yeouido-dong, Yeongdeungpo-gu, Seoul 150–721, Korea. LG Corporation is the corporate personification of the LG chaebol. LG Corporation has an ownership or management interest—or both—in the other LG Defendants. The agreement not to hire or recruit from Samsung could not be made without LG Corporation's knowledge or participation, due to the hierarchical nature of chaebols.

21.     Defendant LG Electronics Inc. ("LG Electronics") is a South Korean entity headquartered at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea, 150-721. LG Electronics has annual global revenues exceeding $50 billion, and is a global force in consumer electronics, home appliances and mobile communications. LG Electronics established its first overseas branch office in New York in 1968. LG Electronics employs close to 90,000 employees world-wide, most of whom are located outside of South Korea.

22.     LG Electronics controls and operates several subsidiaries based in the United States, including at least one that is located in this district.

23.     LG Electronics owns a controlling interest in Defendant LG Display Co., Ltd.

24.     Defendant LG Electronics U.S.A., Inc. is a wholly owned subsidiary of LG Electronics, with a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.

25.     Defendant LG Display Co., Ltd. is a South Korean entity headquartered at LG Twin Towers, 128, Yeoui-daero., Yeongdeungpo-gu Seoul, Korea.

26.     Defendant LG Display Co., Ltd. is the largest manufacturer of thin-film transistor liquid crystal display (TFT-LCD) panels in the world, and its annual revenue exceeds $25 billion.

27.     Defendant LG Display America Inc. is a wholly owned subsidiary of LG Display Co., Ltd. and has a principal place of business at 2540 North First Street, Suite 400, San Jose, California, 95131.

28.     Defendant LG Corporation owns the website lg.com, from which anyone may apply for United States jobs at all LG affiliates.

29.     In the relevant time period, Defendants LG Electronics, LG Electronics U.S.A., Inc., LG Display Co., Ltd., LG Display America, Inc., and LG Corporation (collectively, "LG") employed thousands of employees in the United States, including thousands in California.

30.     LG has important ties to this district. In addition to maintaining offices in Northern California to support is cloud computing, high technology, and television businesses, LG is a major supplier of displays to Apple for its devices (such as the iPhone, iPad, and watch), and it maintains offices and employees in this district to service the relationship with Apple.

**C.     Samsung Defendants**

31.     Defendant Samsung Group is a South Korean entity headquartered at 11 Seocho-Daero 74gil, Seocho-Gu Seoul, Seoul, 06620 South Korea. Samsung Group is the corporate personification of the Samsung chaebol. Samsung Group has an ownership or management interest—or both—in the other Samsung Defendants. The agreement not to hire or recruit from LG could not be made without Samsung Group's knowledge or participation, due to the hierarchical nature of chaebols.

32.     Defendant Samsung Electronics Co., Ltd. is a South Korean multinational electronics company, with a principal place of business and home office at San #24 Nongseo-Dong Giheung-Gu Yongincity, Gyeonggi-Do, Korea, 446-711, South Korea. Samsung Electronics Co., Ltd. operates and controls several United States subsidiaries, including at least one with its principal place of business in California.

33.     Defendant Samsung Electronics America, Inc. is a wholly owned subsidiary of Defendant Samsung Electronics Co., Ltd., with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey, 07660.

34.     Defendant Samsung Semiconductor, Inc. is a wholly owned subsidiary of Defendant Samsung Electronics Co., Ltd., and has a principal place of business at 3655 North First Street, San Jose, California, 95134.

35.     Defendant Samsung Group owns the website Samsung.com, from which anyone may apply for United States jobs at all Samsung affiliates.

36.     In the relevant time period, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Group (collectively, "Samsung") employed thousands of employees in the United States, including thousands in California.

37.     Samsung has extensive ties to this district. Samsung has waged epic patent litigation concerning Apple's iPhone in this district. This litigation relates to Samsung's well-known and profitable smartphone business. A substantial part of Samsung's smartphone business is located in this district, as well as a significant part of its research and development for many product lines.

## V.     CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on behalf of himself and all others similarly situated (the "U.S. Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). The U.S. Class is defined as follows:

> All natural persons employed at any time by Defendants in the United States on a salaried basis during the period from January 1, 2005 through the present (the "Class Period"). Excluded from the Class are: retail employees; corporate officers, members of the boards of directors, and senior executives of Defendants who entered into the illicit agreements alleged herein; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

39.     Plaintiff brings a subclass based on California law, for all LG and Samsung employees located in California (the "California Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). The California Class is defined as follows:

> All natural persons employed at any time by Defendants in California on a salaried basis during the period from January 1, 2005 through the present (the "Class Period"). Excluded from the Class are: retail employees; corporate officers, members of the boards of directors, and senior executives of Defendants who entered into the illicit agreements alleged herein; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

40.     Plaintiff does not, as yet, know the exact size of the U.S. Class or California Class because such information is in the exclusive control of Defendants. Based upon the nature of the trade and commerce involved, Plaintiff believes that there are at least tens of thousands of U.S. and California Class members, and that U.S. Class members are geographically dispersed throughout California and the United States. Joinder of all members of the Classes, therefore, is not practicable.

41.     The questions of law or fact common to the Classes include but are not limited to:

a.      whether the conduct of Defendants violated the Sherman Act or the Cartwright Act;

b.      whether Defendants' conspiracy and associated agreements, or any one of them, constitute a *per se* violation of the Sherman Act or Cartwright Act;

c.      whether Defendants' agreement is void as a matter of law under California Business and Professions Code § 16600;

d.      whether the conduct of Defendants violated California Business and Professions Code §§ 17200, *et seq.*;

e.      whether Defendants fraudulently concealed their conduct;

f.      whether Defendants' agreement unlawfully restrained trade, commerce, or competition for skilled labor among Defendants;

g.      whether Plaintiff and the Classes suffered antitrust injury or were threatened with injury;

h.    the difference between the total compensation Plaintiff and the Classes received from Defendants, and the total compensation Plaintiff and the Classes would have received from Defendants in the absence of the illegal acts, contracts, combinations, and conspiracy alleged herein;

i.    the type and measure of damages suffered by Plaintiff and the Classes.

42.    These and other questions of law and fact are common to the Classes, and predominate over any questions affecting only individuals in either Class.

43.    Plaintiff's claims are typical of the claims of the Classes.

44.    Plaintiff will fairly and adequately represent the interests of the Classes and has no conflict with the interests of either Class.

45.    Plaintiff has retained competent counsel experienced in antitrust litigation and class action litigation to represent himself and the Classes.

46.    Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

47.    This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution as a class action will eliminate the possibility of repetitive litigation.  There will be no material difficulty in the management of this action as a class action.  By contrast, prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## VI.    FACTUAL ALLEGATIONS

### A.    Trade and Commerce

48.    During the Class Period, Defendants employed Class members in California and throughout the United States, including this judicial district.

49.    Defendants' conduct substantially affected interstate commerce throughout the United States and caused antitrust injury throughout the United States.

### B.    The LG and Samsung Workforce

50.    LG and Samsung are two of the largest and most dominant chaebols in South Korea. Both focus primarily on technology design and manufacturing, and their businesses overlap across product lines in electronics, computing, communications, and consumer goods. The companies are

strikingly similar: the LG and Samsung headquarters are located across the street from one another in Seoul, and each has established a base of operations in Silicon Valley. In Korea, LG and Samsung control entire parts of Seoul, and local neighborhoods catering to one or the other's employees are known as "Samsung Town" and "LG Town."

51.     Because of these companies' focus on electronics and technology, both employ a significant number of workers in California's Silicon Valley.

52.     The two companies also share a history of collusive activity: in 2006 the United States Department of Justice's Antitrust Division announced that it had revealed a price fixing scheme in the market for liquid crystal display ("LCD") products that included Defendants Samsung Electronics, Co., Ltd., Samsung Semiconductor, Inc., Samsung Electronics America, Inc., LG Display Co., Ltd., and LG Display America, Inc.

53.     LG and Samsung have a long-standing agreement—reached at the highest levels of the company's corporate hierarchy—not to solicit or hire one another's workers. This policy extends to all LG and Samsung affiliates, and to all of the companies' United States workers.

54.     By eliminating competition between themselves, LG and Samsung have foreclosed the most likely alternative workplace for their employees. Because the LG and Samsung corporate cultures are so similar, and the companies have comparable product lines, each company is where the other's employees are most marketable.

55.     In a competitive labor market, each Defendant would compete for the other's employees and there would be significant mobility between the two companies. This competition and mobility would allow the workforces each to demand—and collectively receive—higher wages, benefits and other compensation, either in exchange for switching employers or for staying with the current employer.  Such compensation benefits would extend to employees whether or not such employees would have been subject to recruiting, or hired, by the other company absent the agreement given the standard ways in which corporate salary structures are set, maintained, and enforced.

56.     Such employee mobility also provides a necessary and competitive exchange of information: when an employee receives a better offer from a competing company, he or she informs his or her coworkers of the new, higher competitive offer. These workers can then seek employment with a

competitor, or demand equal or higher pay to stay. Moreover, because companies employ salary structures, when a group of employees are able to leverage higher compensation, the benefits tend to be spread across the workforce.  Therefore, an agreement not to recruit or hire affects not only the individuals who are denied new employment opportunities or compensation information, but also her coworkers.

57.     Absent the unlawful agreement, Defendants LG and Samsung would regularly solicit and hire each other's current employees.

58.     As with other companies in the high technology labor market, hiring is often accomplished through the use of a recruiter or headhunter. Recruiters in this industry will often reach out directly to potential candidates. Although this practice most frequently takes place over on-line professional or social media platforms, recruiters and refer to this method as "cold calling."  Cold calling includes communicating directly in any manner (including orally, in writing, telephonically, or electronically) with another firm's employee who has not otherwise applied for a job opening.

59.     Hiring firms value this recruiting method, because when a recruiter is the first to contact a potential employee, the hiring firm knows that employee is loyal, and in-demand.

60.     In a competitive labor market, such as Silicon Valley, firms must court qualified candidates, and with ever-expanding needs, the fastest way to fill openings is through recruitment efforts centered on cold calling.

61.     Recruiting and hiring employees from a rival firm—poaching—is one of the only methods to hire experienced workers. And by hiring from the competition, a firm not only saves on training the new hire, but takes a valuable asset from a rival.

62.     For these reasons and others, cold calling is a key competitive tool companies use to recruit employees, particularly high technology employees with advanced skills and abilities who work for close rivals.

63.     Therefore, like an agreement foreclosing rival recruiting and hiring, the compensation effects of eliminating cold calling are not limited to the particular individuals who receive cold calls, or to the particular individuals who would have received cold calls.  Instead, the impact of the anticompetitive practices alleged herein applies commonly to all salaried employees of Samsung and LG.

64.     Defendants carefully monitor and manage their internal compensation levels to achieve certain goals, including:

      a.     maintaining approximate compensation parity among employees within the same employment categories (for example, among sales associates and engineers);

      b.     maintaining certain compensation relationships among employees across different employment categories (for example, among junior sales associates and engineers relative to senior sales associates and engineers);

      c.     maintaining high employee morale and productivity;

      d.     retaining employees; and

      e.     attracting new and talented employees.

65.     Under competitive and lawful conditions, the foregoing objectives would be subject to pressure from the possibility that LG and Samsung could freely hire one another's employees, resulting in greater compensation and employment benefits for LG and Samsung employees experienced generally across the entire workforces of the two companies.

66.     Similarly, under competitive and lawful conditions, Defendants would use cold calling as one of their most important tools for recruiting and retaining skilled labor, and the use of cold calling among Defendants commonly impacts and increases mobility and thus total compensation of all Defendants' employees.

## C.     Defendants' Conspiracy to Fix the Compensation of Their Employees at Artificially Low Levels

67.     Defendants' agreement consists of a bilateral agreement to not hire or recruit one another's employees. On information and belief, this agreement was reached at the highest levels of LG and Samsung's corporate hierarchies, and each Defendant affiliate or subsidiary knew about, participated in, and enforced the agreement.

68.     In 2010, a human resources official at LG confirmed that LG and Samsung "have an 'understanding' not to hire from each other across levels."[3] This official, speaking of the India

---

[3] http://articles.economictimes.indiatimes.com/2010-12-03/news/27603228_1_anti-poaching-talent-pool-hr-experts.

workforce of LG and Samsung, said "since the two companies have the biggest product portfolio in the market, it makes sense to have an agreement in place." The agreement referenced by this official applied to Defendants' workers in the United States at the time that it was made and still applies now, but this policy was not discussed in the article, and has at all times been kept secret to United States employees.

69.     LG has kept the existence of its 'do not hire' policy for Samsung employees secret from its United States employees. LG tells its workers that it has a "single standardized process that governs the evaluation and incentive systems for all our employees. Capability evaluation on performance and team capability of office employees is conducted once a year to comprehensively evaluate the employee's degree of achievement of goals, difficulty of goals, and competitiveness. Performance evaluation will be reflected on the individual's salary increase & incentive bonus and the capability evaluation will be reflected on promotion."[4]

70.     Samsung similarly touts its commitment to treating its employees fairly, stating that "[w]e comply with all law and ethical standards," and "respect the dignity and diversity of individuals."[5]

71.     In October 2013, Plaintiff was contacted via LinkedIn by a recruiter seeking to fill a position with Samsung. The same day, the recruiter informed Plaintiff "I made a mistake! I'm not supposed to poach LG for Samsung!!! Sorry! The two companies have an agreement that they won't steal each other's employees." Prior to this interaction with a recruiter, Plaintiff was not aware that LG and Samsung had an agreement not to recruit or hire one another's employees.

72.     It is implausible that the United States subsidiaries or affiliates of Samsung and LG would agree, without the knowledge or consent of their South Korean parents, not to recruit or hire one another's employees. This is because, unlike western conglomerates or multi-national corporations, chaebols are "hierarchical, centralized" organizations characterized by "tight family control."[6] Accordingly, the agreement was made by top officials at LG and Samsung, and applied broadly to all of

---

[4]http://www.lg.com/global/sustainability/employee/fair-evaluation

[5]http://www.samsung.com/us/aboutsamsung/sustainability/sustainablemanagement/download/SamsungValueCode_ofConduct.pdf

[6]Murillo & Sung, *supra*, at pp. 4-5.

LG and Samsung's employees in the United States, including workers at various subsidiaries of LG and Samsung.

**D.    Effects of Defendants' Conspiracy on Plaintiff and the Classes**

73.    By restricting not only hiring but solicitation of each other's employees, Defendants eliminated the most likely source of competition for skilled labor.

74.    Defendants entered into, implemented, and policed the agreement with the knowledge of the overall conspiracy, and did so with the intent and effect of suppressing mobility and information sharing between and among employees of the companies, and thereby fixing the compensation of the employees of participating companies at artificially low levels.  These anticompetitive effects were the purpose of the agreement, and Defendants succeeded in lowering the compensation and mobility of their employees below what would have prevailed in a lawful and properly functioning labor market.

75.    Defendants' conspiracy was an ideal tool to suppress their employees' compensation. Whereas agreements to fix specific and individual compensation packages would be hopelessly complex and impossible to monitor, implement, and police, eliminating competition with one another for skilled labor was simple to implement and easy to enforce. Such agreement affects compensation and mobility of all employees in a common and predictable way.

76.    Plaintiff and each member of the Classes were harmed by the agreement herein alleged. The elimination of competition and suppression of compensation and mobility had an impact on all Class members.  For example, an individual who was an employee of LG received lower compensation and faced unlawful obstacles to mobility as a result of the agreement with Samsung, and vice versa.

77.    The impact of this bilateral agreement is exacerbated because of the similarity between LG and Samsung's businesses, and the scope of the business lines in which LG and Samsung compete in the United States. Absent the agreements, LG's workers would be the most desirable targets of recruiting efforts by Samsung, and vice versa.

//

//

//

//

### FIRST CLAIM FOR RELIEF

**(On Behalf of the U.S. Class)**
***Violations of Section 1 of the Sherman Act, 15 U.S.C. § 1***

78.     Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further allege against Defendants and each of them as follows:

79.     Defendants entered into and engaged in unlawful agreements in restraint of the trade and commerce described above in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Beginning no later than January 2005 and continuing to the present, Defendants engaged in continuing agreements in restraint of trade and commerce in violation of Section 1 of the Sherman Act.

80.     Defendants' agreement has included concerted action and undertakings among the Defendants with the purpose and effect of: (a) fixing the compensation of Plaintiff and the U.S. Class at artificially low levels; and (b) eliminating, to a substantial degree, competition among Defendants for skilled labor.

81.     As a direct and proximate result of Defendants' combinations and contracts to restrain trade and eliminate competition for skilled labor, members of the U.S. Class have suffered injury to their property and have been deprived of the benefits of free and fair competition on the merits.

82.     The unlawful agreement among Defendants has had the following effects, among others:

a.     competition among Defendants for skilled labor has been suppressed, restrained, and eliminated; and

b.     Plaintiff and class members have received lower compensation from Defendants than they otherwise would have received in the absence of Defendants' unlawful agreement, and, as a result, have been injured in their property and have suffered damages in an amount according to proof at trial.

83.     The acts done by each Defendant as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

84.     Defendants' contracts, combinations and/or conspiracies are *per se* violations of Section 1 of the Sherman Act.

85.     Accordingly, Plaintiff and members of the U.S. Class seek three times their damages caused by Defendants' violations of Section 1 of the Sherman Act, the costs of bringing suit, reasonable attorneys' fees, and a permanent injunction enjoining Defendants' from ever again entering into similar agreements in violation of Section 1 of the Sherman Act.

**SECOND CLAIM FOR RELIEF**

**(On Behalf of the California Class)**
*Violations of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, et seq.*

86.     Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants and each of them as follows:

87.     Defendants entered into and engaged in an unlawful agreement in restraint of the trade and commerce described above in violation of California Business and Professions Code section 16720. Beginning no later than January 2005 and continuing through the present, Defendants engaged in continuing agreements in restraint of trade and commerce in violation of the Cartwright Act.

88.     Defendants' agreements have included concerted action and undertakings among the Defendants with the purpose and effect of: (a) fixing the compensation of Plaintiff and the California Class at artificially low levels; and (b) eliminating, to a substantial degree, competition among Defendants for skilled labor.

89.     As a direct and proximate result of Defendants' combinations and contracts to restrain trade and eliminate competition for skilled labor, members of the California Class have suffered injury to their property and have been deprived of the benefits of free and fair competition on the merits.

90.     The unlawful trust among Defendants has had the following effects, among others:

a.     competition among Defendants for skilled labor has been suppressed, restrained, and eliminated; and

b.     Plaintiff and California Class members have received lower compensation from Defendants than they otherwise would have received in the absence of Defendants' unlawful trust, and,

as a result, have been injured in their property and have suffered damages in an amount according to proof at trial.

91.     Plaintiff and members of the California Class are "persons" within the meaning of the Cartwright Act as defined in section 16702.

92.     The acts done by each Defendant as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

93.     Defendants' contracts, combinations and/or conspiracies are *per se* violations of the Cartwright Act.

94.     Accordingly, Plaintiff and members of the California Class seek three times their damages caused by Defendants' violations of the Cartwright Act, the costs of bringing suit, reasonable attorneys' fees, and a permanent injunction enjoining Defendants from ever again entering into similar agreements in violation of the Cartwright Act.

### THIRD CLAIM FOR RELIEF

**(On Behalf of the California Class)**
*Violations of  Cal. Bus. & Prof. Code § 16600*

95.     Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants and each of them as follows:

96.     Defendants entered into, implemented, and enforced express agreements that are unlawful and void under Section 16600.

97.     Defendants' agreement and conspiracy have included concerted action and undertakings among the Defendants with the purpose and effect of: (a) reducing open competition among Defendants for skilled labor; (b) reducing employee mobility; (c) eliminating opportunities for employees to pursue lawful employment of their choice; and (d) limiting employee professional betterment.

98.     Defendants' agreement and conspiracy are contrary to California's settled legislative policy in favor of open competition and employee mobility, and are therefore void and unlawful.

99.     Defendants' agreement and conspiracy were not intended to protect and were not limited to protect any legitimate proprietary interest of Defendants.

100.    Defendants' agreement and conspiracy do not fall within any statutory exception to Section 16600.

101.    The acts done by each Defendant as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each Defendant's affairs.

102.    Accordingly, Plaintiff and members of the California Class seek a judicial declaration that Defendants' agreements and conspiracy are void as a matter of law under Section 16600, and a permanent injunction enjoining Defendants' from ever again entering into similar agreements in violation of Section 16600.

### FOURTH CLAIM FOR RELIEF

**(On Behalf of the California Class)**
***Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, et seq.***

103.    Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint, and further alleges against Defendants as follows:

104.    Defendants' actions to restrain trade and fix the total compensation of their employees constitute unfair competition and unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professional Code sections 17200, *et seq.*

105.    The conduct of Defendants in engaging in combinations with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce; eliminating competition among them for skilled labor; and fixing the compensation of their employees at artificially low levels, constitute and was intended to constitute unfair competition and unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code section 17200.

106.     Defendants also violated California's Unfair Competition Law by violating the Sherman Act, Cartwright Act, and/or by violating Section 16600.

107.     As a result of Defendants' violations of Business and Professions Code section 17200, Defendants have unjustly enriched themselves at the expense of Plaintiff and the California Class.  The unjust enrichment continues to accrue as the unlawful, unfair, and fraudulent business acts and practices continue.

108.     To prevent their unjust enrichment, Defendants and their co-conspirators should be required pursuant to Business and Professions Code sections 17203 and 17204 to disgorge their illegal gains for the purpose of making full restitution to all injured class members identified herein. Defendants should also be permanently enjoined from continuing their violations of Business and Professions Code section 17200.

109.     The acts and business practices, as alleged herein, constituted and constitute a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code section 17200, *et seq.*, including, but in no way limited to, violations of the Sherman Act, Cartwright Act, and/or Section 16600.

110.     Defendants' acts and business practices as described above, whether or not in violation of the Sherman Act, Cartwright Act, and/or Section 16600 are otherwise unfair, unconscionable, unlawful, and fraudulent.

111.     Accordingly, Plaintiff, on behalf of himself and all others similarly situated, requests the following class-wide equitable relief:

    a.     that a judicial determination and declaration be made of the rights of Plaintiff and the California Class members, and the corresponding responsibilities of Defendants;

    b.     that Defendants terminate the joint policy of not recruiting or hiring one another's employees and be permanently enjoined from enforcing this joint policy in the United States;

    c.     that Defendants be declared to be financially responsible for the costs and expenses of a Court-approved notice program by mail, broadcast media, and publication designed to give immediate notification to class members; and

d.      requiring disgorgement and/or imposing a constructive trust upon Defendants' ill-gotten gains, freezing Defendants' assets, and/or requiring Defendants to pay restitution to Plaintiff and to all members of the Class of all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment on their behalf and that of the Class by adjudging and decreeing that:

1.      This action may proceed as a class action, with Plaintiff as the designated Class representative and his counsel as Class Counsel;

2.      Defendants have combined and conspired in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and California's Cartwright Act, California Business and Professions Code section 16750(a), and that Plaintiff and the members of the Classes have been damaged and injured in their business and property as a result of this violation;

3.      The alleged combinations and conspiracy be adjudged and decreed to be *per se* violations of the Sherman Act and Cartwright Act;

4.      Plaintiff and the members of the Classes they represent recover threefold the damages determined to have been sustained by them as a result of the conduct of Defendants, complained of herein, and that judgment be entered against Defendants for the amount so determined;

5.      The alleged combinations and conspiracy be adjudged void and unlawful under Section 16600;

6.      The conduct of Defendants constitutes unlawful, unfair, and/or fraudulent business practices within the meaning of California's Unfair Competition Law, California Business and Professions Code section 17200, *et seq.*;

7.      Judgment be entered against Defendants and in favor of Plaintiff and each member of the Classes he represents, for restitution and disgorgement of ill-gotten gains as allowed by law and equity as determined to have been sustained by them, together with the costs of suit, including reasonable attorneys' fees;

2 seconds

8.      Defendants are jointly and severally responsible financially for the costs and expenses of a Court-approved notice program through post and media designed to give immediate notification to the Class;

9.      Plaintiff and the Classes are entitled to pre-judgment and post-judgment interest on the damages awarded them, and that such interest be awarded at the highest legal rate from and after the date this complaint is first served on Defendants;

10.    For a permanent injunction against the enforcement of any agreement between LG and Samsung to not recruit or hire one another's employees;

11.    For other equitable relief, including a judicial determination of the rights and responsibilities of the parties;

12.    For attorneys' fees;

13.    For costs of suit; and

14.    For such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.


Dated: September 9, 2016                    Respectfully Submitted,


By:       */s/ Joseph R. Saveri*
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Matthew S. Weiler (State Bar No. 236052)
Kyla J. Gibboney (State Bar No. 301441)
JOSEPH SAVERI LAW FIRM, INC.
555 Montgomery, Suite 1200
San Francisco, CA 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
            mweiler@saverilawfirm.com
            kgibboney@saverilawfirm.com

Stuart G. Gross (State Bar No. 251019)
GROSS & KLEIN LLP
The Embarcadero
9 Pier, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628
Facsimile: (415) 480-6688
Email: sgross@grosskleinlaw.com

Eric L. Cramer
Michael J. Kane
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email:  ecramer@bm.net
          mkane@bm.net

Vincent J. Esades
HEINS MILLS & OLSON, P.L.C
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: 612-338-4605
Facsimile: 612-338-4692
Email: veasades@heinsmills.com

John Radice
RADICE LAW FIRM, P.C.
34 Sunset Blvd
Long Beach, NJ 08008
Telephone: (646) 245-8502
Facsimile: (609) 385-0745
Email: jradice@radicelawfirm.com

*Attorneys for Plaintiff and the Proposed Classes*